## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JACQUELINE K. KALGREN, ADMINISTRATRIX OF THE ESTATE OF EDWARD J. KALGREN, DECEASED, ON BEHALF OF THE ESTATE AND NEXT-OF-KIN OF EDWARD J. KALGREN, DECEASED, | ) ) ) ) ) ) | CIVIL ACTION NO. 3:2005-7 |
| | ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | JUDGE GIBSON |
| | ) | |
| LAWRENCE C. HUBER, AN INDIVIDUAL; GAINEY TRANSPORTATION SERVICES, INC., A CORPORATION; DANIEL B. NAKAMURA, AN INDIVIDUAL; AND JONATHAN B. KNIGHT, AN INDIVIDUAL, | ) ) ) ) ) | |
| | ) | |
| Defendants, | ) ) | |
| v. | ) ) | |
| | ) | |
| WILLIAM ZACHARY SIMS, | ) ) | |
| Third Party Defendant. | ) ) | |
| ROBERTA L. SIMS, WILLIAM ZACHARY SIMS, BROOKE HUNTER AND ALICIA BROOKE HUNTER, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| | ) | |
| LAWRENCE C. HUBER, GAINEY TRANSPORTATION SERVICES, INC. AND DANIEL NAKAMURA, | ) ) ) ) | |
| Defendants. | ) | |

# **Memorandum Opinion and Order of Court**

## **GIBSON, J.**

This matter comes before the Court on the Third-Party Defendant William Zachary Sims' (hereinafter "Sims")[1] Motion for Summary Judgment (Document No. 34) and Defendants Lawrence C. Huber (hereinafter "Huber") and Gainey Transportation Services, Inc.'s (hereinafter "Gainey") Motion for Summary Judgment (Document No. 67). For the reasons stated herein, Sims' Motion will be denied and Huber/Gainey's Motion will be denied in part and denied in part as moot.

## **FACTUAL BACKGROUND/PROCEDURAL HISTORY**[2]

The case *sub judice* concerns a multi-vehicular accident on a two-lane stretch of Interstate 80 (hereinafter "I-80") in Clearfield County, Pennsylvania on December 28, 2002. Although it was snowing at the time of the accident, it is disputed in the record before the Court whether the snow was actually accumulating on the roadway or melting on contact. Defendant Daniel Nakamura (hereinafter "Nakamura") was driving a Chevrolet Malibu[3] headed west on I-80 at approximately 6:30 p.m. on the date in question. Nakamura's vehicle contacted a patch of ice on the roadway causing him to collide with and deflect off of the guiderail on the north side of the roadway and come to a rest facing south in the left lane of travel with the front-end of the vehicle situated off of the roadway onto the berm, but otherwise blocking the left lane of travel with the driver's side facing oncoming traffic. Nakamura and

---

[1]Sims is also a plaintiff in the case *sub judice*.

[2]The following description of events is a summary of facts the Court has gleaned from the record and is set forth to orient the reader as to the background of the case *sub judice*, but not to set forth undisputed material facts for the purpose of analyzing the summary judgment motions before the Court.

[3]This vehicle was owned by Jonathan Knight of Nashville, Tennessee.

2

his passenger Erin Knight (hereinafter "Knight") exited the vehicle after Nakamura's failed attempt to drive the vehicle off of the roadway. Approximately a minute later, William Zachary Sims (hereinafter "Sims"), the driver of a Chevrolet Camaro, and his passenger, Alicia Brooke Hunter (hereinafter "Hunter"), were traveling in the left lane of I-80 when they encountered the Nakamura vehicle and in executing an attempt to avoid the Nakmura vehicle, Sims swerved his vehicle to the right hand lane avoiding Nakamura's vehicle but lost control and traveled back across the left lane of the roadway and came to a rest off of the roadway and berm within the snow-covered median strip. The Sims' vehicle was unable to be driven off of the median strip. Sims and Hunter then exited the vehicle without injury and proceeded to walk up to the berm of I-80 where they subsequently viewed Edward J. Kalgren's (hereinafter "decedent") truck parked on the opposing berm situated to the right of the fog line. It is disputed as to whether the decedent's truck was in anyway situated over the fogline and on the roadway but the decedent did have his "flashers" engaged on his truck. The decedent was engaging in conversation with Sims and Hunter from opposing sides of I-80 when a vehicle driven by John Barr who was accompanied by his wife Lisa Barr (hereinafter collectively "Barrs") approached the decedent's vehicle from behind on the right-hand berm of I-80. Within a matter of seconds, John Barr viewed through his rearview mirror the tractor trailer being driven by Huber and owned by Gainey coming toward his position with its trailer swinging around counterclockwise and it appearing to be out of control. John Barr began to move his vehicle forward to avoid any collision with Huber's vehicle and although the Huber vehicle did pass the Barr's location with the right rear corner of the trailer swinging around counterclockwise, it struck the decedent's truck on its driver's side. Huber's trailer proceeded to force the truck into the air as the trailer kept swinging past the truck. Huber's vehicle proceeded in

3

its counterclockwise motion across I-80 to the point in the median strip where Sims' vehicle was situated and where Sims and Hunter were standing. It is unknown whether Sims' vehicle, because of the contact with the Huber vehicle, or Huber's vehicle itself contacted Sims and Hunter, but Sims and Hunter sustained injuries resulting from the Huber vehicle's trek across I-80. The Huber vehicle came to a rest facing east in the median strip beyond the location of the Sims vehicle and Sims and Hunter. The decedent's truck eventually came to rest further down the right berm of I-80 as a result of this collision. The collision between the Huber vehicle and the decedent's truck resulted in the decedent's death.

In an effort to help, Lisa Barr contacted emergency and police services with the aid of a cellular phone and then proceeded to the location where Sims and Hunter were standing prior to their collision. She located Sims and Hunter and they were eventually transported to the Altoona Hospital for treatment of various physical injuries.

As will be discussed herein, the facts surrounding Huber's operation of his vehicle remain in dispute for purposes of the present motions, but the Court relates the following in order to convey a general understanding of the factual background. Huber has indicated that he was traveling in the left hand lane when he encountered the Nakamura vehicle and then merged into the right hand lane of I-80. Nakamura indicated that he never saw Huber in the left lane of I-80. Nevertheless, in accordance with Huber's understanding of events, his truck was still unstable from the sudden evasive action taken at the time he perceived a portion of the decedent's truck within the right lane of travel. In order to avoid colliding with the decedent's truck, Huber began braking. This braking caused his trailer, containing a relatively light load, to swerve counterclockwise from behind him, thereby turning the trailer and

4

adjoining truck in a counterclockwise motion causing the decedent's vehicle to strike that vehicle and then to continue across I-80 to contact either Sims' vehicle or Sims and Hunter themselves.

Nakamura was cited for not driving his vehicle at a safe speed for the road conditions (*see* 75 Pa.C.S.A. § 3361). He was the only driver to be issued any traffic violations that evening.

Two separate civil actions were filed that initiated the present litigation: first, the decedent's administrator, Jacqueline K. Kalgren (hereinafter "Kalgren") filed a civil action in the Court of Common Pleas of Clearfield County, Pennsylvania at number 04-1965 which was removed to this Court on January 6, 2005; and a second original complaint was filed in this Court at Civil Action Number 3:2004-173. Sims along with his mother Roberta L.Sims (hereinafter collectively "Sims/Sims") and Hunter along with her mother, Kimberly A. Hunter (hereinafter collectively "Hunter/Hunter") as Plaintiffs filed the latter action. These actions were consolidated at Civil Action Number 3:2005-7 by Order of Court dated February 2, 2005.

Sims, as a third party defendant moved for summary judgment on May 4, 2006. *See* Document No. 34. Huber and Gainey originally moved for summary judgment on May 5, 2006, but this motion was removed by the Clerk of Court because it did not include counsel's electronic signature. Huber and Gainey's motion was re-filed on May 9, 2006, but subsequently stricken by the Court in the Order of Court dated June 19, 2006 for failure to comply with Local Rule of Court 56.1. Huber and Gainey then filed this same motion in proper form on July 5, 2006. The Court, through the order dated June 19, 2006, has previously approved the settlement of any claims Kalgren has against Defendants Knight, Nakamura, Huber and Gainey. Thus, Huber and Gainey's motion for summary judgment to the extent it seeks summary judgment with regard to Kalgren's survival claim has been settled and Huber and

5

Gainey's motion as to this argument is now moot.

## ANALYSIS

### I. Summary Judgment Standards

Summary judgment is appropriate only when it is demonstrated that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-32, 106 S.Ct. 2548, 2552- 57, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment, all reasonable inferences must be drawn in favor of the non-movant. *Oritani [Sav. and Loan Ass'n v. Fidelity and Deposit Co.*, 989 F.2d 635, 638].

*Troy Chemical Corp. v. Teamsters Union Local No. 408*, 37 F.3d 123, 125-126 (3d Cir. 1994).

As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. See generally 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2725, pp. 93-95 (1983). This materiality inquiry is independent of and separate from the question of the incorporation of the evidentiary standard into the summary judgment determination. That is, while the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs. Any proof or evidentiary requirements imposed by the substantive law are not germane to this inquiry, since materiality is only a criterion for categorizing factual disputes in their relation to the legal elements of the claim and not a criterion for evaluating the evidentiary underpinnings of those disputes.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986).

Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Adickes*, 398 U.S. at 158-159, 90 S.Ct. at 1608-1609. Neither do we suggest that the trial courts should act other than with caution in granting summary judgment or that the trial court may not deny summary judgment in a case where there is reason to believe that the better course

6

would be to proceed to a full trial. *Kennedy v. Silas Mason Co.*, 334 U.S. 249, 68 S.Ct. 1031, 92 L.Ed. 1347 (1948).

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513 - 2514, 91 L.Ed.2d 202, 216 (1986).

## II.   Third-Party Defendant Sims' Motion for Summary Judgment (Document No. 34)

The first motion for summary judgment is made by Sims, in his capacity as a third party defendant and moves for summary judgment against Huber and Gainey's claims of negligence against him. Sims' Motion (Document No. 34). Sims presented a concise statement of material facts in which all but one fact lack supporting references to his submitted exhibits. Sims' Brief (Document No. 35), pp. 2-4. Sims' failure to comply with Local Rule 56.1(B), causes the Court to rely upon the record generally rather than the Concise Statement of Material Facts which are not properly referenced from the record. *See Lockhart v. Hoenstine*, 411 F.2d 455, 458 (3d Cir. 1969)(under Rule 56, courts rely on all matters "properly" before them).

In order to evaluate Sims' arguments for summary judgment, it becomes necessary to first review the applicable Pennsylvania law that controls the negligence claims in this case. The issue brought to the Court by the parties in the case *sub judice* concerns the causation element of a negligence claim. In negligence claims, causation is of two types: cause in fact and legal cause. A plaintiff must prove factual cause, otherwise understood as the "but for" cause. *Summers v. Giant Food Stores, Inc.*, 743 A.2d 498, 509 (Pa. Super. 1999). The "but for" causation is proof that the alleged injury would not have occurred "but for" a certain act or presence of a condition and has been described as a *de minimus* standard that is separate and apart from the legal causation standard of being a "substantial factor." *See*

7

*Mahon v. W.C.A.B.*, 835 A.2d 420, 428-429 (Pa. Commw. 2003); *Takach v. B.M. Root Co.*, 420 A.2d

1084, 1086-1087 (Pa. Super. 1980). The separate concept of legal causation is summarized below in

this quote from the Pennsylvania Superior Court in *Lux v. Gerald E. Ort Trucking, Inc.*, 887 A.2d 1281

(Pa.Super. 2005):

> In trying to recover for an action in negligence, a party must prove four elements. They
> are: 1. A duty or obligation recognized by law. 2. A breach of the duty. 3. *Causal*
> *connection between the actor's breach of the duty and the resulting injury.* 4. Actual
> loss or damage suffered by complainant.

> \*\*\*

> "Proximate causation is defined as a wrongful act which was a substantial factor in
> bringing about the plaintiff's harm." *Dudley v. USX Corp.*, 414 Pa.Super. 160, 606 A.2d
> 916, 923 (1992) (citations omitted). Proximate cause does not exist where the causal
> chain of events resulting in plaintiff's injury is so remote as to appear highly
> extraordinary that the conduct could have brought about the harm. *Id.*, 606 A.2d at 923.
> At issue here is whether or not Appellee's negligence was a "substantial factor" in
> bringing about Appellant's injuries to satisfy the element of causation.

>> In order to establish causation, the plaintiff must prove that the breach
>> was "both the proximate and actual cause of the injury." Proximate
>> cause is a question of law to be determined by the court before the issue
>> of actual cause may be put to the jury. A determination of legal
>> causation, essentially regards "whether the negligence, if any, was so
>> remote that as a matter of law, [the actor] cannot be held legally
>> responsible for [the] harm which subsequently occurred." Therefore, the
>> court must determine whether the injury would have been foreseen by
>> an ordinary person as the natural and probable outcome of the act
>> complained of.

> *Reilly*, 633 A.2d at 210 (citations omitted).

> The substantial factor test for determining whether a party's negligence was the
> proximate or legal cause of another's injury is set forth in *Wisniewski v. Great Atlantic*
> *& Pacific Tea Co.*, 226 Pa.Super. 574, 323 A.2d 744, 748 (1974):

8

> This test provides that the actor's negligent conduct is a legal cause of
> harm to another if:
> (a) his conduct is a substantial factor in bringing about the harm, and
> (b) there is no rule of law relieving the actor from liability because of the
> manner in which his negligence has resulted in harm.

*Wisniewski,* 226 Pa.Super. 574, 323 A.2d 744, 748 (1974) (*citing* RESTATEMENT
(SECOND) OF TORTS, § 431 (1965)).

The method for determining whether negligent conduct is a substantial factor
in producing the injury is set forth in *Willard v. Interpool, Ltd.,* 758 A.2d 684, 688
(Pa.Super.2000):

> The following considerations are in themselves or in combination with
> one another important in determining whether the actor's conduct is a
> substantial factor in bringing about harm to another:
> (a) the number of other factors which contribute in producing the harm
> and the extent of the effect which they have in producing it;
>
> (b) whether the actor's conduct has created a force or series of forces
> which are in continuous and active operation up to the time of the harm,
> or has created a situation harmless unless acted upon by other forces for
> which the actor is not responsible;
>
> (c) lapse of time.

*Willard,* 758 A.2d 684, 688 (Pa.Super.2000) (*citing* RESTATEMENT (SECOND) OF
TORTS § 433 (1965)).

*Lux v. Gerald E. Ort Trucking, Inc.,* 887 A.2d 1281, 1286 -1287 (Pa.Super. 2005)(emphasis in
original).

"Substantial factor" is an issue of fact for the jury and "may be removed from the jury's
consideration only when it is clear that reasonable minds cannot differ on the issue." *Rabutino v.
Freedom State Realty Co., Inc.,* 809 A.2d 933, 941 (Pa.Super. 2002)(citation omitted). "If [an] actor's
conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw

9

nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent

him from being liable." *Id.* at 942 (citation omitted). The "mere lapse of time" does not prevent one's

negligence from being a legal cause of the injury "where it is evident that the influence of the actor's

negligence is still a substantial factor." *Taylor v. Jackson*, 643 A.2d 771, 776 (Pa.Commw.1994)(citing

RESTATEMENT (SECOND) OF TORTS § 433(c) cmt. f ).

A person who is injured while acting "reasonably" in performing acts of rescue is permitted a

full recovery for his injuries from the party who negligently caused the situation which necessitated the

rescue as a "causal connection" between the two are preserved in the "rescue doctrine"; unreasonable

acts of rescue, that is acts of the rescuer that are "negligent", cause the application of Pennsylvania's

law of comparative negligence to apply to apportion liability between a defendant and the rescuer.

*Pachesky v. Getz*, 510 A.2d 776, 783 (Pa. Super. 1986).

Affecting the liability analysis in analyzing "substantial factor" causation, is the understanding

of any intervening force or superceding cause:

> An "intervening force" is defined as "one which actively operates in producing
> harm to another after the actor's negligent act or omission has been committed."
> Restatement (Second) of Torts § 441 (1965). A "superceding cause" is defined as "an
> act of a third person or other force which by its intervention prevents the actor from
> being liable for harm to another which his antecedent negligence is a substantial factor
> in bringing about." RESTATEMENT (SECOND) OF TORTS § 440 (1965).
>    Among the factors to consider in determining whether a subsequent force is an
> intervening or superceding cause are whether the force is operating independently of any
> situation created by the first actor's negligence and whether it is a normal result of that
> situation. *Trude, supra.* "Even where an intervening act is wrongful it does not become
> a superceding cause unless, looking retrospectively from the harm through the sequence
> of events by which it was produced, it is so extraordinary as not to have been reasonably
> foreseeable."

10

*Rabutino v. Freedom State Realty Co., Inc.*, 809 A.2d 933, 941-942 (Pa.Super. 2002). Another

consideration with multiple "substantial factors" is "concurrent causes."

> In situations where more than one substantial factor brings about harm, the principle of
> concurrent cause applies. Even though concurrent causes may have contributed to the
> harm, if a defendant's negligence was a substantial factor in producing the result, the
> defendant may be held liable for the full amount of the damages. *Monzo v.
> Commonwealth, Department of Transportation,* 124 Pa.Cmwlth. 360, 556 A.2d 493
> (1989), *appeal granted,* 523 Pa. 652, 567 A.2d 655 (1989). Thus, "[a] party may recover
> damages where two or more substantial causes combine to cause an event, even if no
> one cause standing alone would have brought about the injury. To escape liability, the
> defense must show that the plaintiff's condition would have been the same today even
> without the defendant's negligence." *DeVita v. Durst,* 167 Pa.Cmwlth. 105, 113, 647
> A.2d 636, 640 (1994), citing *Boushell v. J.H. Beers, Inc.,* 215 Pa.Super. 439, 258 A.2d
> 682 (1969).

*Trude v. Martin*, 660 A.2d 626, 632 (Pa.Super. 1995).

Huber and Gainey cite to the cases of *Smith v. Pulcinella*, 656 A.2d 494 (Pa. Super. 1995),

*Shamey v. State Farm Mutual Insurance Co.*, 331 A.2d 498 (Pa. Super. 1974), *Lux v. Gerald E. Ort

Trucking, Inc.*, 53 Pa.D.&C 4th 391 (C.C.P. Clearfield Cty. 2001), *Taylor v. Jackson*, 643 A.2d 771 (Pa.

Commw. 1994), and *Herman v. Welland Chemical, Inc*, 580 F.Supp. 823 (M.D.Pa. 1984) to support

their argument that the record could support a finding that the negligence of Sims was the "but for"

cause of Hunter being on the roadside of I-80 in inclement weather at the site of Nakamura's and Sims'

vehicles and the resulting factual cause of Kalgren's alleged rescue attempt of Sims and Hunter, both

of which were foreseeable acts resulting from Sims' negligence. Huber's Response Brief (Document

No. 58-1), pp. 7-13. Additionally, Huber and Gainey argue that it was foreseeable that another vehicle

on I-80 would collide with Hunter's person and Kalgren's parked vehicle and that but for Sims'

negligence, Hunter and Kalgren would not have been at that location of I-80 at the time of such a

11

collision. Huber's Response Brief, pp. 9, 12-13. The Court agrees as the circumstances surrounding

1) Sims' collision; 2) the amount of time between Sims' vehicle leaving the roadway, Hunter's exiting

of the vehicle and waiting along the roadway; and 3) the subsequent approach of Huber's vehicle to the

location of Hunter and Kalgren do not conclusively establish that Sims' actions are far enough removed

from Hunters' injuries to not be a factual or legal cause of those injuries or to otherwise not be

considered negligent under Pennsylvania jurisprudence. Therefore, the Court finds that the facts of

record are in dispute as to actions of Sims and whether they have caused the injuries on Hunter and the

decedent. Therefore, since there is a genuine issue as to a material fact, Sims' motion is denied.

## III.    Defendants Huber and Gainey Transportation Inc.'s Motion for Summary Judgment

## (Document No. 67)

The following concise statement of material facts has been developed through the proposed facts

submitted by Huber and Gainey and the responses thereto by Plaintiffs Sims and Hunter and will be

used to analyze only Huber and Gainey's Motion for Summary Judgment. The motion for summary

judgment must be denied based upon the Court's review of the entire record as presented in this matter.

### Concise Statement of Material Facts[4]

At the time of the accident [I-80] had a posted speed limit of 65 mph and it was

snowing [but the consistency of the snowfall is disputed]. The Kalgren Plaintiffs aver

in the Complaint that Co-Defendant, Daniel Nakamura...while traveling westbound on

---

[4]All bracketed material includes revisions or additions to the parties' original submissions made pursuant to Local Rule of Court 56.1 and has been added to clarify the respective statements. Facts submitted by the parties, but not included have been deemed by the Court to be either in dispute or immaterial for purposes of this motion.

12

[I-80], lost control of his vehicle and careened off a guardrail on the north side of the highway, crossed both lanes of traffic and came to rest facing south along the fog line of the left (passing) lane of the Interstate. Plaintiffs [Sims and Hunter] similarly aver in their Complaint that [Nakamura's] vehicle in fact blocked the left lane of the Interstate, forcing [Sims] to make an evasive steering maneuver to the right in an attempt to avoid a collision. Mr. Nakamura corroborated Plaintiffs' allegation[s] and testified that his vehicle in fact once disabled created a barricade for westbound traveling traffic approaching in the left hand lane on the Interstate. Mr. Nakamura indicated that he placed his vehicle into the park position to ensure his passenger was not injured. He then unsuccessfully attempted to get the vehicle into drive so that he could move it onto the median. Unable to do so, Mr. Nakamura turned off the vehicle's engine, exited the vehicle and walked into the grassy median separating the eastbound and westbound lanes of travel. Mr. Nakamura also confirmed that he did nothing to notify oncoming traffic of his disabled vehicle that was obstructing the left lane of traffic. Mr. Sims testified that he was forced to swerve his vehicle right upon encountering Mr. Nakamura's disabled vehicle. After making the evasive steering maneuver to avoid Mr. Nakamura's vehicle, Mr. Sims' car fishtailed and eventually came to rest in the southbound median. Mr. Sims vehicle apparently became disabled so both Plaintiffs removed themselves and began standing near the median [off of the roadway]. [The decedent] noticed the disabled Sims' vehicle so he parked his vehicle on the right side of the Interstate to render assistance [but it is disputed to what extent

13

this vehicle was situated across the fogline and on the roadway, if at all.] After losing control of his vehicle, [Huber's] tractor trailer eventually came in contact with [decedent's] pick-up truck....This collision caused [decedent] to become fatally injur[ed]. Mr. Huber's tractor trailer then came in contact with Plaintiffs, [Sims] and [Hunter][either directly or indirectly through pushing the Sims' Camaro], for which they then bring the underlying litigation.

The sudden emergency doctrine in Pennsylvania has been described as follows:

The sudden emergency doctrine is frequently employed in motor vehicle accident cases wherein a driver was confronted with a perilous situation requiring a quick response in order to avoid a collision. The rule provides generally, that an individual will not be held to the 'usual degree of care' or be required to exercise his or her 'best judgment' when confronted with a sudden and unexpected position of peril created in whole or in part by someone other than the person claiming protection under the doctrine. The rule recognizes that a driver who, although driving in a prudent manner, is confronted with a sudden or unexpected event which leaves little or no time to apprehend a situation and act accordingly should not be subject to liability simply because another perhaps more prudent course of action was available.

*Carpinet v. Mitchell*, 853 A.2d 366, 374 (Pa. Super. 2004).

The sudden emergency doctrine provides a defense in a negligence action to a driver of a motor vehicle who suddenly and unexpectantly finds himself confronted with a perilous situation that permits no opportunity to assess the danger and respond appropriately. *Elder v. Orluck*, 334 Pa.Super. 329, 483 A.2d 474, 487 (1984), *affirmed*, 511 Pa. 402, 515 A.2d 517 (1986). Situations which may constitute a sudden emergency include a dust cloud, a moving object, a sudden blocking of the road, the sudden swerving of another vehicle, blinding lights and a dense patch of fog. *Dickens*, at 517; *Levey v. DeNardo*, 555 Pa. 514, 725 A.2d 733 (1999). Our Supreme Court recently reiterated the purpose of this doctrine stating:

14

> [A] person confronted with a sudden and unforeseeable occurrence, because of the shortness of time to react, should not be held to the same standard of care as someone confronted with a foreseeable occurrence. It is important to recognize, however, that a person cannot avail himself of the protection of this doctrine if that person was himself driving carelessly or recklessly.

*Levey*, 725 A.2d at 735-36 (citing *Lockhart, supra.*).

*Cunningham v. Byers*, 732 A.2d 655, 657-658 (Pa. Super. 1999).[5]

Huber and Gainey move for summary judgment with regard to the claims of Kalgren, Sims/Sims and Hunter/Hunter[6] asserting that Nakamura had created a "perilous situation" which required evasive action from Huber who moved into the right lane only to encounter another vehicle[7] which again required an attempt at evasive action on Huber's part to move his vehicle over to the left lane of travel which then resulted in his trailer turning counterclockwise behind him and causing a collision with the decedent's vehicle and either Sims' and Hunter's persons or the Sims' vehicle. Huber's Brief, pp. 10-11. Huber and Gainey essentially argue that the sudden emergency doctrine is applicable to Huber's actions in avoiding the Nakamura vehicle and there is no genuine issue of material fact as to the actions of Huber as he drove at approximately 45 miles per hour and otherwise acted in accordance with the sudden emergency doctrine thus preventing any negligence claim of the Plaintiffs from proceeding to

---

[5]"Generally, a jury should not be instructed on both the assured clear distance ahead rule and the sudden emergency doctrine since the two are mutually exclusive." *Cunningham* at 658.

[6]The designation of "Sims/Sims" and "Hunter/Hunter" is used to refer to both Zachary William Sims and Roberta L. Sims and Alicia Brooke Hunter and Kimberly A. Hunter respectively as well as the negligence claims of both the two parents and the claims of plaintiffs who eventually did reach the age of majority.

[7]In the context of comparing the obstacles encountered by Sims and Huber, Huber and Gainey reference the Barrs' vehicle in their argument and not the Kalgren vehicle as the second obstructing vehicle. Huber's Brief, p. 10. However, Huber testified at deposition that it was Kalgren's vehicle that was the second obstructing vehicle in Huber's lane of travel and which Huber attempted to avoid. Huber Depo., pp. 116-120, 124, 129-132.

15

trial. Huber Brief, pp. 11-12. However, the material facts in genuine dispute prevent the Court from granting summary judgment.

The record before the Court contains conflicting evidence regarding the speed of the Huber vehicle and which lane of travel it was in before encountering the Nakamura vehicle and whether the Nakamura vehicle had any lights on or whether they were flashing at the time Huber was approaching its location. See Huber Depo. (Document No. 34-2), pp. 77-78; Nakamura Depo (Document No. 48-2), pp. 56-57, 65, 121. Huber's manner of operating his vehicle itself could preclude the application of the sudden emergency doctrine along with the conflicting evidence as to Huber's speed and the conditions of the road as described within the depositions of John Barr (Document No. 48, pp. 19-20, 38)("The roads were completely snow covered"; "Like I said, the road was snow covered"), Huber (Document No 34-2, pp. 64-65, 100-101)("It was, in fact, a light snow that was melting the moment it hit the pavement"; "heavy snow" "was along the shoulders"; "Q: It was–the road was clear? A: Yes."; after the accident the snow was sticking to the roadway "lightly" "[e]nough so that you could make foot tracks in the snow"); and of Nakamura, (Document No. 48-2, p. 34)("light flurries," "road didn't appear to be affected"). Furthermore, assuming Huber used all due care in his driving, the question of the application of the sudden emergency doctrine still hinges upon whether he would have encountered the Nakamura vehicle if, as Nakamura believes, Huber was in the right lane, and thereafter if the decedent's vehicle was in the right lane of travel as Huber approached it, thus causing him to swerve. The facts could support the conclusion that Huber was traveling too fast for conditions, had continually traveled in the right lane and could have mistakenly assumed the decedent was in his lane of travel and needlessly attempted to move to the left lane and then lost control of his trailer. These unresolved

16

factual issues are critical with regard to any conclusion as to Huber's use of due care and the application of the sudden emergency doctrine and thus must be determined by the trier of fact as the pertinent facts are in dispute from the record presently before the Court. Huber and Gainey's motion for summary judgment as to all of the Plaintiffs' negligence claims is denied.

Huber and Gainey also argue for summary judgment with regard to any claims of Kalgren for her decedent's conscious pain and suffering (*see* Notice of Removal, Exhibit A- Kalgren Complaint, ¶ 26(a)) because they do not believe any evidence supporting this claim exists in the record. *Id.* However, it was made clear to the Court through the telephonic status conference on February 20, 2007, that this survival action has been settled in accordance with the Motion for Authority to Settle and Discontinue Action at Document Number 61 and the Order granting that motion found at Document Number 64. Therefore, this motion by Huber and Gainey is denied as moot.

An appropriate Order follows.

17

**AND NOW**, this 1st day of March, 2007, in accordance with the foregoing Memorandum Opinion, IT IS HEREBY ORDERED THAT the Third-Party Defendant William Zachary Sims' Motion for Summary Judgment (Document No. 34) is DENIED; IT IS FURTHER ORDERED THAT Defendants Lawrence C. Huber and Gainey Transportation Services, Inc.'s Motion for Summary Judgment (Document No. 67) is DENIED IN PART as to the motion for summary judgment as to the claims of William Zachary Sims, Roberta L. Sims, Alicia Brooke Hunter, and Kimberly A. Hunter, and DENIED IN PART AS MOOT as to the survival claim of Jacqueline K. Kalgren for the pain and suffering of her decedent.

**BY THE COURT:**

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**

18